UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL LOUKAS,

         Plaintiff,         Case No. 1:13-cv-1378

v.         Honorable Janet T. Neff

DANIEL HEYNS et al.,

         Defendants.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff Michael Loukas presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF). Plaintiff sues MDOC Director Daniel Heyns and MDOC Deputy Director Timothy Finco. Plaintiff also sues the following DRF personnel: Warden Willie O. Smith, and Resident Unit Managers Cheryl Miller, Russell Klatt and Milinda Braman. In his complaint, Plaintiff raises claims of due process and equal protection in connection with the calculation of his good time and disciplinary credits.

Plaintiff is serving time for a number of convictions. In 1979, Plaintiff was convicted and sentenced for assault with intent to murder and second-degree murder. In 1983, Plaintiff successfully moved for, and received, a new trial. While on bond, Plaintiff was convicted of felony firearm and armed robbery and sentenced to 2 years, and 20 years to 40 years, respectively. Less then a month later, on December 1, 1983, Plaintiff was re-sentenced in connection with his 1979 convictions to a 20 to 40 year term of imprisonment for the assault with intent to murder conviction and a 20 to 40 year term of imprisonment for the second-degree murder conviction. In 1988, Plaintiff was convicted of escaping from prison and was sentenced as a third habitual offender to a 5 to 10 year term of imprisonment. In 2000, Plaintiff was convicted of attempted escape and was sentenced as a fourth habitual offender to a prison term of 6 months to 5 years and 6 months. Each of Plaintiff's sentences was ordered to be served consecutively.

Based on the timing of his sentences, Plaintiff alleges that he earns both good time credits[1] and disciplinary credits.[2] These credits are earned and forfeited according to different schedules. Plaintiff alleges that on November 10, 2010, the MDOC revised policy directive (PD) 03.03.105 regarding prisoner discipline. The revised policy prohibits forfeiture of disciplinary credits for a variety of misconduct charges for which credits were forfeited under the prior policy. Plaintiff alleges that under the old policy he forfeited 513 days of credits for misconduct that, under the revised policy, would no longer result in the forfeiture of any credits. Defendants refuse to restore these forfeited credits. Plaintiff alleges that this revised policy applies retroactively because it is not a new policy but an amended version of the same policy. Plaintiff asserts that he has been subject to the policy throughout his confinement and that he is entitled to the benefits of the change in policy. Plaintiff asserts that the revised policy does not state that it is not retroactive or that it does not apply to Plaintiff's situation and that if Defendants did not want the policy to apply retroactively it would have been written into the policy.

Plaintiff alleges that Defendants' failure to restore his 513 days of disciplinary credit under the revised policy is an equal protection violation. Plaintiff contends that his equal protection rights are being violated because "prisoners similarly situated as the Plaintiff who are found guilty of the same type of misconducts as the Plaintiff had been found guilty for in the past, will not have to forfeit their stored credits as the Plaintiff did." (Compl., docket #1, Page ID#9.) Plaintiff asserts that "the individuals the Plaintiff is referring to are all incarcerated just as the Plaintiff is, and under

---

[1]*See* MDOC Policy Directive 03.07.100 ("This policy only applies to prisoners eligible to earn and be granted good time credits. Any prisoner convicted of an offense committed on or after April 1, 1987 is not eligible to earn or be granted good time credits.")

[2]*See* MDOC Policy Directive 03.01.101 ("Prisoners sentenced for certain offenses committed after December 10, 1978 and before December 15, 2000 are eligible to earn disciplinary credits as set forth in this policy.")

the same policy," but Defendants are applying the revised policy in such a way that "the similarly situat[ed] individuals are reaping mitigating benefits within the policy, where the Plaintiff is not." (*Id.*)

Plaintiff alleges that the revised disciplinary policy created a rule that benefits a "particular class" of individuals who are similarly situated to Plaintiff. Plaintiff contends that he has forfeited credits for misconducts of which other prisoners have been found guilty but, since the revision of the disciplinary policy, have not forfeited credits. Plaintiff contends that although every prisoner incarcerated by the MDOC is subject to the same disciplinary policy, they are not all entitled to the same benefits of the policy.

Plaintiff asserts that in the past when the MDOC has revised policies which imposed sanctions on a group of prisoners, the MDOC has rectified the situation by removing all past sanctions imposed on the group of prisoners. Plaintiff alleges that on July 30, 2013, the MDOC revised policy directive 05.03.150 regarding religious beliefs, and in connection with this revision expunged all administrative sanctions enforced against prisoners from August, 2003 through November, 2013. In support of this assertion, Plaintiff attaches to his complaint the settlement notice from a 2006 class action lawsuit against the MDOC. (*See* Compl., docket #1-3, Page ID##109-110.) The settlement applied to all Muslim prisoners who requested but where denied a halal diet and/or who were found guilty of misconduct or received some form of administrative sanction from August, 2003 through November, 2013 due to a request to attend or attendance at a religious service which conflicted with a prison assignment, *e.g.* school or work. (*Id.*) The settlement provided that the MDOC would provide a religious meal that comports with halal tenets and satisfies prisoner nutritional needs. (*Id.*) Additionally, the settlement provided that the MDOC

would expunge misconduct and/or correct the commitment file of any prisoner who was found guilty of misconduct or received an administrative sanction as a result of a prisoner assignment-religious observance conflict during the operative dates. (*Id.*)

Plaintiff alleges that this settlement notice establishes that "the MDOC is only accommodating a 'particular class' of prisoner when revising policies." (Compl., docket #1, Page ID#10.) Plaintiff alleges that when the MDOC revised the religious beliefs policy it removed all prior sanctions on behalf of a "'specific class of 'Muslim' prisoners, but refuses to do so for the revised policy affecting Plaintiff who is not a 'Muslim.'" (*Id.*)

Additionally, Plaintiff alleges that MICH. COMP. LAWS § 800.33 prescribes a mandatory procedure that Defendants must observe when reviewing a prisoner's file for restoration of forfeited credits. Plaintiff alleges that Defendants are refusing to follow this procedure when reviewing Plaintiff's file. Plaintiff accurately notes that MICH. COMP. LAWS §800.33 provides that "the good time committee" makes recommendations to the warden regarding the awarding and restoration of disciplinary credits. *Id.* at ¶ 9. MICH. COMP. LAWS § 800.33 also provides that the warden may restore forfeited credits at the recommendation of the good time or disciplinary committee and prior written approval by a deputy director. *Id.* at ¶ 10.

In connection with his 2009 annual review, the disciplinary committee did not restore any forfeited credits, but Plaintiff was awarded 24 days of special credits for exceptional behavior.

In connection with his 2010 and 2011 annual reviews, the disciplinary committee once again did not restore any forfeited credits, but for each year, awarded Plaintiff 24 days of special credits for exceptional behavior. Plaintiff learned that, in violation of MICH. COMP. LAWS § 800.33, the committee did not contact Plaintiff's work supervisor for the 2010 or the 2011 review.

With regard to the 2010 review, Plaintiff filed a grievance against the disciplinary committee alleging that his due process rights were violated. The grievance response falsely claimed that Plaintiff was not working. Plaintiff proceeded to Step II where Defendant Smith acknowledged that Plaintiff had been working but did not restore any credits. Plaintiff alleges that the entire grievance review process was tainted because Defendant Miller answered a grievance in which she was a named party. With regard to the 2011 review, Plaintiff filed a grievance regarding violation of his due process rights. Plaintiff also wrote to Defendant Finco, the final authority for awarding disciplinary credit, but never received a response.

Prior to his 2012 review Plaintiff wrote letters to Defendants Miller and Smith requesting the restoration of his forfeited credits because of his positive behavior and due to the change in the prisoner disciplinary policy. Plaintiff's letters went unanswered. Plaintiff filed another grievance against the disciplinary committee because his review was late and because staff would not respond to his letters. Plaintiff alleges that awarding special credit, but failing to restore forfeited credits is a due process violation. In connection with the 2012 review, Plaintiff had five days of forfeited credits restored. Plaintiff's work supervisor did not participate in this review.

Prior to his 2013 review, Plaintiff sent another complaint to Defendant Finco regarding violations of his due process and equal protection rights. In connection with his 2013 review, Plaintiff was awarded 30 days of forfeited credits and 28 days of special credits. However, Defendant did not restore the credits Plaintiff had lost prior to the revision of the disciplinary policy.

Plaintiff seeks as relief injunctions requiring Defendants to follow MICH. COMP. LAWS § 800.33 and provide Plaintiff with timely annual reviews and requiring Defendants to apply the revised disciplinary policy and re-calculate Plaintiff's credits based on that policy. Additionally,

Plaintiff seeks money damages in the amount of $25,000 against each Defendant for due process violations and another $25,000 from each Defendant for equal protection violations. Finally, Plaintiff seeks punitive damages in the amount of $25,000 from each Defendant.

## Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994)

### A. **Equal Protection**

Plaintiff alleges that Defendants are violating his equal protection rights because they refuse to restore 513 days of credits. Plaintiff alleges that since the November 10, 2010 change to the disciplinary policy, prisoners who commit certain types of misconduct no longer lose, or fail to earn, good time and/or disciplinary credit whereas before the change in policy the very same conduct resulted in Plaintiff losing or failing to earn good time and/or disciplinary credit. Based on this allegation, Plaintiff asserts that he is being treated differently from similarly situated prisoners.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).

Because neither a fundamental interest nor a protected class is at issue, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Plaintiff fails to state an equal protection claim because he does not sufficiently allege that he is being treated differently from other similarly situated prisoners. To the extent Plaintiff intends to claim that he is similarly situated to prisoners who do not now lose or fail to earn credits for certain types of misconduct, he is not being treated differently from this group of prisoners. Plaintiff does not allege that all prisoners, except Plaintiff, who lost or failed to earn credits prior to the change in policy have had the new policy applied to them retroactively. Thus, all MDOC prisoners, like Plaintiff, who lost or failed to earn credits in the past did not recoup or obtain these credits once the policy changed. Plaintiff also does not allege that the change in policy has not been applied to him prospectively. Thus, Plaintiff and all other prisoners incarcerated with the MDOC are currently subject to the same policy and lose or fail to earn credits in the same way.

What Plaintiff appears to be trying to establish is that he is similarly situated to all prisoners who have only been subject to the revised policy during their time of incarceration, but this is simply not the case. Plaintiff is not similarly situated to prisoners who have never been subject to the old policy. Moreover, to the extent that Plaintiff is similarly situated to prisoners that have been subject to the old policy, he is being treated the same. Likewise, to the extent he is similarly situated to prisoners subject to the current policy, he is being treated the same.

To the extent that Plaintiff alleges that he is being treated differently than Muslim prisoners who recouped certain credits in connection with the settlement of a lawsuit against the MDOC, he is equating apples with oranges. The MDOC did not retroactively apply the revised religious beliefs policy; rather, it applied the revised policy as it was required to do by the settlement. Muslim prisoners did not benefit from the application of the religious beliefs policy retroactively, they benefitted from being plaintiffs in a class action lawsuit that sought a change in MDOC policies. In connection with the settlement of the lawsuit, an MDOC policy was changed and the plaintiffs in the lawsuit were allowed to recoup certain credits that had been taken away. Nothing in the settlement of the class action lawsuit supports Plaintiff's position that the MDOC is preferring Muslim prisoners over other prisoners in the restoration of credits or that MDOC policy revisions generally apply retroactively.

Moreover, both Michigan state law and MDOC policies make clear that the warden retains discretion in determining whether to restore forfeited credits. *See e.g.*, MICH. COMP. LAWS § 800.33 at ¶ 10 ("[t]he warden . . . may restore . . . credits forfeited."); MDOC PD 03.01.100 ("Prisoners do not have a right to have forfeited good time credits restored; however, a Warden may restore forfeited credits . . ."); MDOC PD 03.01.101 ("Prisoners do not have a right to have forfeited disciplinary credits restored; however, a Warden may order restoration of forfeited disciplinary credits . . ."); MDOC PD 03.01.100 ("Prisoners do not have a right to have forfeited good time credits restored; however, a Warden may restore forfeited credits . . ."). In cases where state action involves discretionary decisionmaking based on a vast array of subjective, individualized assessments "the rule that people should be 'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating

like individuals differently is an accepted consequence of the discretion granted." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008).

For all of the foregoing reasons, Plaintiff has failed to state an equal protection claim.

### B. Due Process

Plaintiff alleges that his due process rights are being violated because Defendants have not followed the proper procedure in conducting his annual reviews and have failed to restore Plaintiff's forfeited disciplinary credits pursuant to MDOC policy.

Plaintiff's due process claims merit little discussion, because they relate only to whether the Defendants are following state law and MDOC policy directives in conducting Plaintiff's annual reviews and in determining whether to restore forfeited disciplinary credits. Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction over the state law claims. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching

their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  April 9, 2014                             /s/ Janet T. Neff
                                                  Janet T. Neff
                                                  United States District Judge